DAVID J. HERNANDEZ & ASSOCIATES
By: David J. Hernandez, Esq.
Attorneys for RONALD WILLIAM
26 Court Street, Suite 2707
Brooklyn, NY 11242

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

RONALD WILLIAM,

                     Plaintiff,

      -against-

THE CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT POLICE OFFICER
CHRISTOPHER FOY (shield #5101), POLICE
OFFICER MARCUS COLON(shield #4439), JOHN
DOES 1-5 (actual names unknown at this time),

                    Defendants.
-----------------------------------------------------------------X

**COMPLAINT IN A CIVIL ACTION**

CIVIL ACTION NO.: *16-5208*

     Plaintiff, RONALD WILLIAM, for his complaint, by his attorneys, DAVID J.

HERNANDEZ & ASSOCIATES, upon information and belief, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate Plaintiff's rights secured to him under

    the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United

    States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. §

    1983; under the Civil Rights Act of 1870, *as amended*, codified as 42 U.S.C. § 1981;

    and under the Civil Rights Attorney's Fees Award Act of 1976, *as amended*, codified

    as 42 U.S.C. § 1988.

2. On or about July 6, 2013 and again on July 1, 2014, the rights of Plaintiff RONALD

    WILLIAM (hereinafter "RONALD") were violated under color of state law by

    employees of Defendant, THE CITY OF NEW YORK (hereinafter "CITY"),

1

including but not limited to Defendant POLICE OFFICER CHRISTOPHER FOY (hereinafter "P.O.FOY"), shield No.:5101, and MARCUS COLON (hereinafter "P.O. COLON"), shield No.: 4439.

3. Defendants' actions arose from i) their perception of RONALD's race, rather than any indication of criminal conduct on his part, ii) from a need to cover-up their unconstitutional racial-profiling of RONALD, and iii) from a need to meet productivity goals (arrest quotas), which are prevalent throughout the New York City Police Department.

4. As a result of the violation of his constitutional rights, RONALD suffered physical and mental injuries. Accordingly, RONALD seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343(a)(3) and (4), which provides for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C § 1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over RONALD's state law claims.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that RONALD's claims arose in the Eastern District of New York.

## JURY DEMAND

7. RONALD respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

8.  RONALD is an African-American male and, at all times relevant hereto, resided in the County of Bronx, City and State of New York.

9.  Defendant CITY is a municipal corporation, incorporated pursuant to the laws of the State of New York, which operates the New York City Police Department (hereinafter "NYPD"), and as such is the public employer of the defendant officers herein.  Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

10. Defendant P.O. FOY is an NYPD police officer, and at all times relevant hereto, acted in that capacity as agent, servant, and/or employee of Defendant CITY and within the scope of his employment.  P.O. FOY is sued in his official and individual capacity.

11. Defendant P.O. COLON is an NYPD police officer, and at all times relevant hereto, acted in that capacity as agent, servant, and/or employee of Defendant CITY and within the scope of his employment.  P.O. COLON is sued in his official and individual capacity.

12. At all times relevant hereto, Defendants were acting under the color of state and local law.  Defendants are sued in their individual and official capacities.  At all times relevant hereto, Defendant CITY was responsible for making and enforcing the policies of NYPD and was acting under the color of law, to wit, under the color of statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York.

3

## FACTS

13. On or about July 6, 2013, at approximately 1:50 P.M., RONALD was lawfully exiting the back seat of a motor vehicle at 677 East 165 Street in Bronx County, City and State of New York, to wait for his fiancée to return from the grocery store.

14. As RONALD was reaching into the back seat to get his medically necessary cane, he was approached by P.O. FOY and another POLICE OFFICER ("hereafter JOHN DOE 1"). P.O. FOY informed RONALD that he had committed a moving traffic violation. RONALD informed the officers that he was not the driver of the vehicle and that his girlfriend had gone to the store a few minutes prior.

15. P.O. FOY ordered RONALD to get back inside the vehicle. P.O. FOY informed RONALD that a kid was shot a few days prior and the perpetrator was driving a rental vehicle. P.O. FOY ordered RONALD to produce the papers of the vehicle. RONALD informed the officers that his fiancée had the papers as she was the renter of the vehicle.

16. Shortly thereafter, RONALD's fiancée returned and showed the papers of the rental vehicle to P.O. FOY. While P.O. FOY looked at the papers, the second police officer "JOHN DOE 1" without authorization, proper warrant, probable or legal cause, excuse or justification searched the vehicle and allegedly found what appeared to be a small quantity of marijuana. At which point, RONALD again informed the two officers that neither the vehicle nor the marijuana were his.

17. RONALD was asked to exit the vehicle and police officers, whereupon P.O. FOY and "JOHN DOE 1",  without warning, announcement, or provocation, and without proper warrant, probable cause or legal cause, excuse or justification, arrested

RONALD. This arrest was unlawful, as it was executed without warrant, probable or legal cause, excuse or justification. As the arrest was unlawful, it also constituted an Assault and Battery upon RONALD.

18. RONALD was taken to Bronx Police Department, located at 215 East 161st Street, Bronx, NY 10451, where he remained for a period of approximately three hours. RONALD was released with a desk appearance ticket on July 6, 2013 at approximately 5:00 PM.

19. On August 30, 2013 RONALD was arraigned, charged under New York Penal Law §§ 221.10 and 221.05, released on his own recognizance, and given a court date.

20. That RONALD was caused to appear at Bronx County Criminal Court on numerous occasions.

21. That upon information and belief, all charges against RONALD were dismissed.

22. On July 1, 2014 at approximately 4:45 PM, RONALD was lawfully at the premises located and known as 162-168 Lenox Avenue, in New York County, City and State of New York.

23. As RONALD was leaving the premises he was approached by P.O. COLON and second unidentified police officer (hereafter "JOHN DOE 2"). The officers ordered RONALD to stop and to identify himself. RONALD informed the officers that he was not comfortable taking out his wallet because the wallet was black and he was afraid the officers may confuse the wallet with a weapon. However, RONALD identified himself verbally by stating his full name and informing the officer that he was a disable war veteran. P.O. COLON informed RONALD that a robbery had occurred a month prior and that the perpetrator was wearing similar clothes to

RONALD's, brown pants and a gray shirt. RONALD asked the officers to confirm the description over the radio, to which the officer refused.

24. Shortly thereafter, P.O. COLON and "JOHN DOE 2", without warning, announcement, or provocation, and without proper warrant, probable cause or legal cause, excuse or justification, arrested RONALD.  This arrest was unlawful, as it was executed without warrant, probable or legal cause, excuse or justification.  As the arrest was unlawful, it also constituted an Assault and Battery upon RONALD.

25. RONALD was placed in a police cruiser and P.O. COLON and JOHN DOE 2, drove RONALD to a nearby store where the alleged victim of the robbery was. RONALD remained in the vehicle with JOHN DOE 2 while P.O. COLON entered the store and brought out a female who pointed out at RONALD.

26. RONALD was taken to 28th Precinct, located at 2271 Frederick Douglass Blvd, New York, NY 10027. RONALD was escorted out the police cruiser by one of the officers while the other searched the back seat of the vehicle. RONALD complained to the police officers that the handcuffs were very tight, to which P.O. COLON replied that he did not "gave it a fuck" that the handcuffs were very tight. Subsequently, P.O. COLON positioned himself behind RONALD and pulled the handcuffs upward causing RONALD to fall forward and slammed his face on the concrete floor. After the fall, RONALD was taken inside the 28th Precinct and due to the severity of the injuries sustained as result of the fall, a police officer called an ambulance.

27. At approximately 5:30 P.M., RONALD was transported to Harlem Hospital Center. RONALD was treated for contusions to multiple parts of his body and was released at on July 2, 2014 at approximately 1:00 A.M.

28. After RONALD's released from Harlem Hospital Center, he was transported back to the 28th Precinct until approximately 2:00 A.M. when he was then transported to Central Booking, located at 100 Centre Street, New York, New York 10013. At approximately 3:00 A.M., RONALD was taken to New York Presbyterian Lower Manhattan Hospital to get evaluated. RONALD was transported back to Central Booking at approximately 6:00 A.M., where he remained until he was released at approximately 12:00 P.M.

29. On July 2, 2014 RONALD was arraigned, charged under New York Penal Law §§ 155.25, 165.40 and 221.05, released on his own recognizance, and given a court date. After numerous court appearances On February 17, 2015, all charges against RONALD stemming from his July 2, 2014 false and unlawful arrest were dismissed by the Hon. Judge Kevin McGrath of the New York Criminal Supreme Court. (Annexed hereto as *Exhibit 2* is a copy of RONALD's Certificate of Disposition for his July 2, 2014 arrest.)

30. Thus, by reason of the aforesaid constitutional deprivation perpetrated by Defendants herein, RONALD was caused to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

## FIRST CAUSE OF ACTION THROUGH 42 U.S.C. § 1983
## DEPRIVATION OF RIGHTS SECURED UNDER THE CONSTITUTION OF THE
## UNITED STATES

31. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. Defendants, under color of state and/or local law, subjected RONALD to the

foregoing acts without due process of law and in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States, through 42 U.S.C. § 1983, thereby depriving RONALD of his rights, privileges and immunities, including, without limitation, deprivation of the following constitutional rights:

   a.  Freedom from unreasonable seizures of their person;

   b.  Freedom from arrest without probable cause;

   c.  Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which RONALD was aware and did not consent;

   d.  Freedom from the lodging of false charges against him by police officers;

   e.  Freedom from having police officers fabricate evidence against him;

   f.  Freedom from malicious prosecution by police, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in RONALD's favor, in contravention of the Fourth Amendment's guarantee of freedom from unreasonable seizures; the Fifth Amendment's guarantee that no individual's freedom shall be deprived without due process of law; and the Fourteenth Amendment's guarantee of substantive and procedural due process;

   g.  The enjoyment of equal protection, privileges and immunities under the laws.

33. Defendants' deprivations of RONALD's constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to

8

reputation.

## SECOND CAUSE OF ACTION THROUGH 42 U.S.C. § 1983
## *MONELL* CLAIM AGAINST DEFENDANT CITY FOR DEPRIVATION OF RIGHTS
## SECURED UNDER THE CONSTITUTION OF THE UNITED STATES

34. RONALD incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

35. All of the acts by the named Defendant police officers described above were carried

out pursuant to overlapping policies and practices of Defendant CITY which were in

existence at the time of the conduct alleged herein and were engaged in with the fully

knowledge, consent, and cooperation and under the supervisory authority of the

defendant CITY and its agency, the NYPD.

36. Defendant CITY and the NYPD, by their policy-making agents, servants and

employees, authorized, sanctioned and/or ratified the individual police defendants'

wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or

encouraged those acts to continue.

37. The acts complained of were carried out by the aforementioned individual Defendants

in their capacities as police officers and officials pursuant to *de facto* customs,

policies, usages, practices, procedures and rules of the CITY and the NYPD, all under

the supervision of ranking officers of the NYPD.

38. The aforementioned *de facto* customs, practices, procedures and rules of the CITY

and the NYPD include, but are not limited to, the following unconstitutional

practices:

   a.  Racially profiling minority individuals, and more specifically, African-

      American individuals, like RONALD;

9

    b.  Falsely swearing out criminal complaints, and/or lying and committing

         perjury during sworn testimony, in order to:

         i.  Cover-up, hide, mask, or justify unconstitutional seizures of persons;

            and/or

         ii.  Meet productivity goals (arrest quotas).

39. **Racial Profiling**.  The existence of the aforesaid unconstitutional custom, practice,

procedure and rule of the CITY and the NYPD as to racial profiling of minority

individuals by NYPD Officers is evidenced by the following:

    a.  According to a study conducted by the Center for Constitutional Rights, from

        2005 through 2008, approximately eighty (80) percent of all stops conducted

        by NYPD Officers were of Blacks and Latinos, which comprise merely

        twenty-five (25) and twenty-eight (28) percent of New York City's total

        population.[i]  Only ten (10) percent of stops conducted by NYPD Officers were

        of Whites, which comprise forty-four (44) percent of New York City's total

        population.[ii]  The Center concluded that:

> data provided by the NYPD plainly demonstrate Black
> and Latino New Yorkers have a greater likelihood of
> being stopped-and-frisked by NYPD officers at a rate
> significantly disproportionate to that of White New
> Yorkers.  That NYPD officers use physical force during
> stops of Blacks and Latinos at an exceedingly
> disproportionate rate compared to Whites who are
> stopped, and that this disparity exists despite
> corresponding rates of arrest and weapons or
> contraband yield across racial lines, further supports
> claims that the NYPD is engaged in racially biased
> stop-and-frisk practices.[iii]

    b.  The above findings are confirmed by reports made by numerous Black NYPD

        Officers, who state that, when off-duty and not in uniform, Black Police

Officers are victims of the same racial profiling to which New York's minorities are frequently subjected.  As explained in an article published by Reuters:

> Reuters interviewed 25 African-American male officers on the NYPD, 15 of whom are retired and 10 of whom are still serving.  All but one said that, when off duty and out of uniform, they had been victims of racial profiling, which refers to using race or ethnicity as grounds for suspecting someone of having committed a crime.
>
> The officers said this included being pulled over for no reason, having their heads slammed against their cars, getting guns brandished in their faces, being thrown into prison vans and experiencing stop and frisks while shopping.  The majority of the officers said they had been pulled over multiple times while driving.  Five had guns pulled on them.[iv]

40. **Falsely Swearing Out Criminal Complaints/Perjury**.  According to the Mollen Commission, police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system.  According to the Commission:

> Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors.  Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.[v]
>
> [...]
>
> What breeds this tolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world.  Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justified, even if unlawful.  As one dedicated officer put it, police officers often view

11

falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."[vi]

The Commission's report was echoed by the Honorable District Court Judge Weinstein, writing for the Eastern District of New York in *Colon v. City of New York*, Nos.: 09-CV-8, 09-CV-9, 2009 WL 4263362 (E.D.N.Y.).  In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on *Iqbal/Twombly* grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer[s] of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged. *Colon v. City of New York*, Nos.: 09-CV-8, 09-CV-9, 2009 WL 4263362 *2 (E.D.N.Y. 2009).

Former Police Commissioner RAYMOND KELLY, upon hearing of Judge Weinstein's Order, particularly the language regarding the frequency with which Police Officers lie under oath, acknowledged that "When it happens, it's not for personal gain.  It's more for convenience."[vii]

41. The existence of the aforesaid unconstitutional custom, practice, procedure and rule

of the CITY and the NYPD as to falsely swearing out criminal complaints, and/or

lying and committing perjury during sworn testimony in order to a) cover up, hide,

mask or justify unconstitutional action; and/or b) to meet productivity goals (arrest

quotas), may be inferred from repeated occurrences of similar wrongful conduct,

which is documented by the following:

a.   **Cover Up, Hide, Mask or Justify Unconstitutional Action**.

   i.   *Stevenson v. Oldson Ajesulas*, 14-CV-3144 (E.D.N.Y.) (P.O.
OLDSON AJESULAS is sued in his individual and official capacities
for the false arrest and false imprisonment of Plaintiff therein, and for
providing false information to the Queens County District Attorney's
Office in an effort to institute a malicious prosecution against the
Plaintiff therein—it should be noted that P.O. OLDSON AJESULAS
is also a named Defendant in the instant action);

   ii.   *Long v. City of New York*, 09-CV-9216 (AKH) (S.D.N.Y.) (officer
who purposefully swore out a false complaint and used excessive force
is convicted of falsifying police records);

   iii.   *Taylor-Mickens v. City of New York*, 09 Civ. 7923 (RWS) (S.D.N.Y.)
(police officers at the 24th Precinct issue four summonses to a woman
in retaliation for her lodging a complaint with the Civilian Complaint
Review Board at the precinct);

   iv.   *Callaghan v. City of New York*, 07 Civ. 9611 (PKC) (S.D.N.Y.)
(officers accused of falsifying evidence and retaliatory arrests of
bicyclists engaged in expressive conduct, *to wit*, riding in Critical
Mass bicycle rides after the 2004 Republican National Convention);[viii]

   v.   *Kaufman v. City of New York*, No.: 87 Civ. 4492 (RO), 1992 WL
247039 (S.D.N.Y. 1992) (bystander arrested for observing an unlawful
arrest in public, requesting the officer's badge number, and telling the
officer that he planned to file a report about the arrest).

   vi.   On August 26, 2013, The Bronx District Attorney's Office issued a

press release indicating that New York City Police Officer Michael Ackermann was charged by a grand jury with Falsifying Business Records in the First and Second Degrees, Tampering with Public Records in the First and Second Degrees, Offering a False Instrument for Filing in the First and Second Degrees, Official Misconduct, and Making a Punishable False Written Statement.   The charges against Officer Ackermann stemmed from his August 4, 2012 arrest of a New York Times photographer.  Officer Ackermann, in justifying the arrest, indicated that the photographer flashed his camera in Officer Ackermann's face while Officer Ackermann attempted to arrest another individual.  However, an investigation into the incident determined that Officer Ackerman's story was a fabrication, as the camera used by the photographer did not have a flash device.

vii.   In early 2010, the CITY settled a civil rights lawsuit, wherein NYPD Officer Sean Spencer falsely arrested and accused a 41-year old woman of prostitution, for $35,000.  The CITY's attorney in the lawsuit admitted that "Officer Spencer falsely reported to the assistant district attorney that he saw [the plaintiff] beckon to three male passersby and that he was aware that plaintiff was previously arrested for [prostitution] when the plaintiff had never been arrested for this offense.[ix]

b.   **Meet productivity goals (arrest quotas)**.

i.   Former NYPD narcotics Detective STEPHEN ANDERSON, testifying during the corruption trial of Brooklyn South narcotics Detective Jason Arbeeny, stated in Brooklyn Supreme Court that it was common practice within the NYPD to fabricate drug charges against innocent people in order to meet arrest quotas.  Said Detective ANDERSON: "As a detective, you still have a number to reach while you are in the narcotics division."[x]

ii.   *Floyd v. City of New York*, No.: 08 Civ. 1034 (SAS), 959 F.Supp.2d 540, 602 (S.D.N.Y. 2013) (Judge Shira A. Schiendlin stated that

14

       "imposing numerical performance goals for enforcement activities, without providing effective safeguards to ensure the activities are legally justified, could result in an officer taking enforcement action for the purpose of meeting a performance goal rather than because a violation of the law has occurred.")

iii. *Bryant v. City of New York*, Index No.: 22011/2007 (Sup. Ct., Kings Co.) (jury declares that NYPD officers acted pursuant to a City policy regarding the number of arrests officers were expected to make that violated plaintiffs constitutional rights and contributed to her arrest);[xi]

iv. *McMillan v. City of New York*, 04-CV-3990 (FB) (RML) (E.D.N.Y.) (officers fabricated evidence and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

v. *Avent v. City of New York*, 04-CV-2451 (CBA) (CLP) (E.D.N.Y.) (same);

vi. *Smith v. City of New York*, 04-CV-1045 (RRM) (JMA) (E.D.N.Y.) (same);

vii. *Richardson v. City of New York*, No.: 02-CV-3651 (JG), 2006 WL 2792768 (E.D.N.Y. 2006) (officers fabricated evidence, including knowingly false sworn complaints, and used excessive force against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

viii. *Taylor v. City of New York*, 01-CV-5750 (ILG) (MDG) (E.D.N.Y.) (same as *Richardson*, paragraph O above, except without the excessive force; judge at the criminal trial acquitting Mr. Taylor noted, on the record, that he had "significant doubt" about the truthfulness of the officers who testified);

ix. In December of 2009, two (2) officers from the 81st Precinct in Brooklyn arrested and falsely swore out charges against an undercover officer from the Internal Affairs Bureau. As explained in an article in the New York Post:

The officers were snared in a sting by Internal Affairs in December when they were told to keep an eye out for people selling untaxed cigarettes in their precinct.

Sometime later, they saw a man hanging out on a corner in the neighborhood and found that he was carrying packs of knock-off smokes.

[Sgt. Raymond] Stukes, 45, and [Officer Hector] Tirado, 30, cuffed him, then claimed that they had seen him selling the bogus butts to two people, according to sources.

Little did the hapless cops know that the man in their custody was an undercover corruption investigator and that the whole incident was caught on video.

To complete the ruse, the undercover cop was processed at the station so as to not tip off Stukes and Tirado about the sting . . .

[P]olice sources said [this action] stem[s] from precinct commanders caving to the pressure of top brass to make themselves look better.

"There's pressure on the cops from the bosses and they're getting pressured from headquarters," a police source told The Post. [xii]   These officers were indicted for felony perjury, filing a false report and filing a false instrument. [xiii]

x.   According to the Police Reform Organizing Project, in its short-report

titled *Working Towards a More Safe and Fair City: Abolishing Quotas*

*and Involving Communities*, "Promotion or job security in the [NYPD]

largely depends on the number of arrests made and tickets issued."

The report continues:

The NYPD has continuously denied the existence of quotas and asserts that it relies only on a set of 'productivity goals'.   These

'productivity goals' are a euphemism for a "quota system". In 2010, the New York State Legislature enacted the Quota Law, which outlawed the use of a quota system for summonses, tickets and stop-and-frisk encounters and prohibited the use of quotas for performance evaluations.   Yet, the NYPD leadership proceeded with a numbers-focused evaluation process of officers.

[ . . . ]

To meet this quota requirement many officers engage in indiscriminate ticketing, arrests, stops and other harassing techniques . . . The easiest people for officers to target to reach their quota requirement are from the most vulnerable communities in New York City: low-income African-American and Latinos, Muslims, sex workers, street vendors, people with mental illness, homeless people and LGBTQ (Lesbian, Gay, Bi-sexual, Transgender and Queer) individuals.[xiv]

42. Furthermore, there is a widespread, egregious custom and practice within the NYPD of retaliation against Officers who speak out against the aforesaid unconstitutional customs of racially profiling minorities and falsely swearing out criminal complaints, which is documented by the following:

a. *Schoolcraft v. City of New York*, No. 10 Civ. 6005 (RWS), 2011 WL 175863 (S.D.N.Y. 2011) (police officer who expose a precinct's policies and practices of, *inter alia*, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing said policies and practices to the press);

b. *Carmody v. City of New York*, No.: 05 Civ. 8084 (HB), 2006 WL 3317026 (S.D.N.Y. 2006) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

c. *Powers v. City of New York*, No.: 04-CV-02246 (NGG), 2007 WL 1026407 (S.D.N.Y. 2007) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

d. *Nonnemann v. City of New York*, No.: 02 Civ. 10131 (JSR) (AJP), 2004 WL 1119648 (S.D.N.Y. 2004) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's unjustified, racially-motivated stop-and-frisk of a group of Hispanic youth);

e. *Barry v. New York City Police Department*, No.: 01 Civ. 10627 *2 (CBM), 2004 WL 758299 (S.D.N.Y. 2004) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

f. *Walton v. Safir*, No.: 99 Civ. 4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

g. *White-Ruiz v. City of New York*, No.: 93 Civ. 7233 (DLC) (MHD), 983 F. Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

h. *Ariza v. City of New York*, No.: CV-93-5287, 1996 WL 118535 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department);

43. That on July 6, 2013 and July 1, 2014, RONALD was arrested as a result and consequence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs.

a. Specifically, the Defendant Officers herein racially profiled RONALD. Per

the New York County District Attorney's Office Crime Report, P.O. COLON
was on patrol with his partner when "he observed RONALD 's hands
clenched." (Annexed hereto as *Exhibit 3* is a copy of the Queens County
District Attorney's Office Crime Report.) As is made clear by this report,
P.O. RONALD's attention was drawn to RONALD simply for having his
hand clenched. There was no appearance of criminal conduct; nonetheless,
what the Defendant Officers saw was an African-American male exiting a
building, and that was sufficient to arouse the Defendant Officers' suspicions.

44. The existence of the above-described unlawful *de facto* policies and/or well-settled
and widespread customs and practices is known to, encouraged and/or condoned by
supervisory and policy-making officers and officials of the NYPD and the CITY,
including, without limitation, Commissioner William BRATTON ("BRATTON").

45. The actions of the individual police Defendants resulted from and were taken
pursuant to the above-mentioned *de facto* policies and/or well-settled and widespread
customs and practices of the CITY, which are implemented by members of the
NYPD, of engaging in systematic and ubiquitous racial-profiling, as well as perjury,
both oral and written, to cover-up federal law violations committed against civilians
by either themselves or their fellow officers, supervisors and/or subordinates, or to
meet arrest quotas. They do so with the knowledge and approval of their supervisors,
commanders and BRATTON who all: (i) tacitly accept and encourage a code of
silence wherein police officers refuse to report other officers' misconduct or tell false
and/or incomplete stories, *inter alia*, in sworn testimony, official reports, in
statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public
statements designed to cover for and/or falsely exonerate accused police officers, and
to meet arrest quotas; and (ii) encourage and, in the absence of video evidence
blatantly exposing the officers' perjury, fail to discipline officers for testifying and/or
fabricating false evidence to initiate and continue the malicious prosecution of
civilians, as was done to RONALD, in order to cover-up civil rights violations
perpetrated by themselves or fellow officers, supervisors and/or subordinates against
those civilians, and to meet arrest quotas.

46. All of the foregoing acts by Defendants deprived RONALD of federally protected

rights, including, but not limited to:

    a. Freedom from unreasonable seizures of their person;

    b. Freedom from arrest without probable cause;

    c. Freedom from false imprisonment, meaning wrongful detention without good faith, reasonable suspicion or legal justification, and of which RONALD was aware and did not consent;

    d. Freedom from the lodging of false charges against him by police officers;

    e. Freedom from having police officers fabricate evidence against him;

    f. Freedom from malicious prosecution by police, that being prosecution without probable cause that is instituted with malice and that ultimately terminated in RONALD'S favor, in contravention of the Fourth Amendment's guarantee of freedom from unreasonable seizures; the Fifth Amendment's guarantee that no individual's freedom shall be deprived without due process of law; and the Fourteenth Amendment's guarantee of substantive and procedural due process;

    g. The enjoyment of equal protection, privileges and immunities under the laws.

47. Defendant CITY knew or should have known that the acts alleged herein would deprive RONALD of his rights, in violation of the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

48. Defendant CITY is directly liable and responsible for the acts of the individual police Defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

49. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

50. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the extensive police misconduct detailed herein.  Specifically, pursuant to the aforementioned policies, practices and/or customs, the Defendant Officers felt empowered to execute a warrantless, unreasonable and unjustified arrest of RONALD, without probable cause, and subsequently, to swear to a false story to cover up their blatant violation of RONALD's constitutional rights, and to meet arrest quotas.

51. RONALD's injuries were a direct and proximate result of Defendant CITY and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of Defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

52. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and

were directly responsible for the violation of RONALD's constitutional rights.

53. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

### THIRD CAUSE OF ACTION THROUGH TO 42 U.S.C. § 1983
### FALSE ARREST IN CONTRAVENTION OF THE CONSTITUTION OF THE UNITED STATES

54. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

55. That Defendant P.O. FOY had neither valid evidence for the arrest of RONALD, nor proper warrant, probable or legal cause, excuse nor justification to seize and detain him on July 6, 2013.

56. That Defendant P.O. COLON had neither valid evidence for the arrest of RONALD, nor proper warrant, probable or legal cause, excuse nor justification to seize and detain him on July 1, 2014.

57. That in detaining RONALD without a fair and reliable determination of probable cause, Defendant CITY abused its power and authority as a policymaker of the NYPD under the color of State and/or local law.  It is alleged that CITY, via their agents, servants and employees routinely charged persons with crimes they did not commit.  RONALD was but one of those persons.

58. As a result of the aforesaid conduct by Defendants, RONALD was subjected to an illegal, improper and false arrest by the Defendants and taken into custody and caused

to be falsely imprisoned, detained and confined without any probable cause, privilege

or consent.

59. That in detaining RONALD, Defendant Officers acted in their capacities as police

officers, with the entire actual and/or apparent authority attendant thereto.

60. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD

by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States

Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty,

mental anguish, emotional distress, shame, humiliation, indignity and damage to

reputation.

### FOURTH CAUSE OF ACTION THROUGH 42 U.S.C. § 1983
### MALICIOUS ABUSE OF PROCESS IN CONTRAVENTION OF THE CONSTITUTION
### OF THE UNITED STATES

61. RONALD incorporates by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

62. Defendants, acting under color of state law, issued legal process to place RONALD

under arrest, and to secure a conviction based on that arrest.

63. Defendants arrested RONALD, and P.O. FOY and P.O. COLON falsely swore in the

Criminal Complaint, in order to obtain a collateral objective outside the legitimate

ends of the legal process; namely, Defendants arrested RONALD in order to cover-up

for their unconstitutional racial profiling of his person, and in order to meet arrest

quotas; Defendants P.O. FOY and P.O. COLON, falsely swore in the Criminal

Complaint in an attempt to further cover-up their unconstitutional racial-profiling, as

well as to meet arrest quotas.

64. Defendants acted with the intent to do harm to RONALD without excuse or

justification.

65. This malicious abuse of process caused RONALD to incur special damages in the form of legal fees incurred.

66. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

## FIFTH CAUSE OF ACTION THROUGH 42 U.S.C. § 1983
## MALICIOUS PROSECUTION IN CONTRAVENTION OF THE CONSTITUTION OF THE UNITED STATES

67. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

68. Defendants, acting under color of state law, misrepresented and falsified evidence before the Queens County District Attorney.  Defendants did not make a complete and full statement of facts to the District Attorneys.

69. Defendants lacked probable cause to initiate criminal proceedings against RONALD.

70. Defendants acted with malice in initiating criminal proceedings against RONALD.

71. Defendants were directly and actively involved in the continuation of criminal proceedings against RONALD.

72. Defendants lacked probable cause to continue criminal proceedings against RONALD.

73. Defendants acted with malice in continuing criminal proceedings against RONALD.

74. Defendants misrepresented and falsified evidence throughout all phases of the

criminal proceeding.

75. Notwithstanding the perjurious and fraudulent conduct of Defendants, the criminal proceedings were terminated in RONALD's favor on for the July 6, 2013 arrest. and on February 17, 2015 for the July 1, 2014 arrest, all charges against RONALD were dismissed.

76. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

## SIXTH CAUSE OF ACTION
## DENIAL OF FAIR TRIAL IN CONTRAVENTION OF THE CONSTITUTION OF THE UNITED STATES

77. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78. By fabricating evidence, Defendants violated RONALD's constitutional right to a fair trial.

79. Defendants were aware or should have been aware of the falsity of the information used to prosecute RONALD.

80. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

## PUNITIVE DAMAGES

81. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

82. The foregoing acts were done recklessly, intentionally, wantonly and with gross indifference to the rights of RONALD, thereby entitling RONALD to punitive and exemplary damages.

## ATTORNEYS FEES AND COSTS UNDER 42 U.S.C. § 1988

83. RONALD incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

84. The foregoing events constitute violations of RONALD's statutory and constitutional rights, thereby entitling him to attorney's fees, costs and disbursements as permitted by 28 U.S.C. § 1983.

## INJURY AND DAMAGES

85. Defendants' deprivations of RONALD'S constitutional rights, secured to RONALD by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, caused RONALD to suffer and endure physical injuries, loss of liberty, mental anguish, emotional distress, shame, humiliation, indignity and damage to reputation.

WHEREFORE, RONALD respectfully requests that judgment be entered:

    a.   Awarding RONALD compensatory damages in a full and fair sum to be determined by a jury;

    b.   Awarding RONALD punitive damages in an amount to be determined by a jury;

c.  Awarding RONALD interest from July 6, 2013;

d.  Awarding RONALD reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

e.  Granting such other and further relief that this Court may deem just and proper.

Dated: Brooklyn, NY
June 18, 2016

Yours etc.,

LAW OFFICE OF DAVID J.
HERNANDEZ & ASSOCIATES

BY: _____
David J. Hernandez, Esq.
26 Court Street, Suite 2707
Brooklyn, NY 11242

---

[i] Center for Constitutional Rights, *Racial Disparity in NYPD Stop-and-Frisks*, January 15, 2009, *available at*, http://ccrjustice.org/sites/default/files/assets/Report-CCR-NYPD-Stop-and-Frisk_3.pdf.

[ii] *Id.*

[iii] *Id.*

[iv] Michelle Conlin, *Off duty, black cops in New York feel threat from fellow police*, Reuters, December 23, 2014, *available at*, http://www.reuters.com/article/2014/12/23/us-usa-police-nypd-race-insight-idUSKBN0K11EV20141223.

[v] Mollen Commission Report, p. 36.

[vi] *Id.* at pp. 40-41.

[vii] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[viii] For a description of this case and the nearly $1 million settlement, *see*, Cate Doty, *Bike Riders in New York Win Settlement*, N.Y. Times, October 18, 2010, *available at* http://www.nytimes.com/2010/10/19/nyregion/19critical.html?_r=1.

[ix] John Marzulli, *City shells out $35G to grandmother, Monica Gonzalez, busted as hooker*, New York Daily News, January 7, 2010, *available at* http://www.nydailynews.com/ny_local/2010/01/08/2010-01-08_city_shells_out_35g_to_granny_busted_as_hooker.html.

[x] John Marzulli, *We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies*, New York Daily News, October 13, 2011, *available at* http://www.nydailynews.com/news/crime/fabricated-drug-charges-innocent-people-meet-arrest-quotas-detective-testifies-article-1.963021.

[xi] This case was settled during trial; for information on the settlement, see, Oren Yaniv, *Court rules that cops do use quotas, woman injured in 2006 arrest settles for $75,000*, N.Y. Daily News, Feb. 19, 2011, *available at* http://www.nydailynews.com/ny_crime/2011/02/19/2011-02-19_court_rules_that_cops_do_use_quotas_woman_injured_in_2006_arrest_settles_for_750.html

[xii] Larry Celona and Tim Perone, *Cops Sting Cops*, New York Post, July 30, 2010, *available at* http://www.nypost.com/p/news/local/brooklyn/cops_sting_cops_lyltuTeLedhKWtruJZYsdl.

[xiii] John Marzulli, *Brooklyn cops charged with barding into sting operation, arresting a fellow officer on bogus charges*, New York Daily News, July 30, 2010, *available at* http://www.nydailynews.com/ny_local/2010/07/30/2010-07-30_brooklyn_cops_charged_with_barging_into_sting_operation_arresting_a_fellow_offic.html.

[xiv] Police Reform Organizing Project, *Working Towards a More Safe and Fair City: Abolishing Quotas and Involving Communities*, September 2014, *available at*, https://gallery.mailchimp.com/f6b63e2555a5fd40610a66a67/files/Working_Towards_a_More_Safe_and_Fair_City.pdf.

INDIVIDUAL VERIFICATION

STATE OF NEW YORK         )
                          : ss.:
COUNTY OF KINGS  )

*Ronald Williams*, being duly sworn, deposes and says:

That deponent is the plaintiff in the within action; and that she has read the

foregoing *Complaint in a Civil Action* and knows the contents

thereof; that the same is true to deponent's own knowledge, except as to the matters

therein stated to be alleged on information and belief, and that as to those matters

deponent believes it to be true.

Sworn to before me this

2 day of June, 2016

Notary Public

H. STEVEN ORTIZ
Notary Public, State of New York
No. 01OR603192
Qualified in Kings County
Commission Expires Sept 5, 20 17